## SIMONS v. MUTUAL CONST. CO.

(Supreme Court, Appellate Division, First Department.    June 11, 1909.)

1. COVENANTS (§ 50*)—RESTRICTIONS AS TO USE OF PREMISES CONVEYED—TEST TO BE APPLIED.

The test to be applied to a covenant in a deed against the use of the premises for particular purposes is the intention of the parties.

[Ed. Note.—For other cases, see Covenants, Dec. Dig. § 50.*]

2. COVENANTS (§ 103*)—RESTRICTIONS AS TO USE OF PREMISES CONVEYED—VIOLATION THEREOF.

By a covenant running with the land, by which, among other things, the grantee was not to erect, make, or carry on "upon any part of the premises * * * any bakery * * * which may be dangerous, noxious, or offensive to the neighboring inhabitants," a bakery is expressly prohibited, and the intention was to restrict the use of the premises so that they would not "be dangerous, noxious, or offensive" to persons occupying the land for residential purposes; and hence it would be violated by the erection, maintenance, and use of bake ovens in the basement of a tenement building afterwards erected on the land, and underneath a store selling breads, cakes, and confectionery.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 169; Dec. Dig. § 103.*]

Houghton, J., dissenting.

Submission of controversy without action between John E. Simons and the Mutual Construction Company.  Judgment for plaintiff as prayed for in the stipulation.

Argued before INGRAHAM, CLARKE, HOUGHTON, SCOTT, and McLAUGHLIN, JJ.

Samuel Wechsler, for plaintiff.
Milton Mayer, for defendant.

McLAUGHLIN, J.   This is a submission of a controversy pursuant to the provisions of Code Civ. Proc. §§ 1279–1281.  The parties are the owners of adjoining lots situate on the southerly side of the Southern Boulevard in the city of New York.  They derived their titles by mesne conveyances from the executors of the last will and testament of Philip Dater.  In 1865 the executors conveyed the lots in question, with other lands, to one Arnold, and this conveyance contained the following covenant:

"The party of the second part hereby covenants with the party of the first part that there shall not be erected, made, or carried on upon any part of said premises any livery stable, coal yard, slaughter house, meat shop, tallow chandlery, steam engine, smith shop, forge, furnace, brass foundry, nail or other iron factory, or any manufactory of glass, gunpowder, starch, glue, varnish, vitriol, ink, or turpentine, or any cooper's, carpenter's or cabinet-maker's shop, or any establishment for tanning, dressing, preparing, or keeping skins, hides, or leather, or any brewery, distillery, sugar or other bakery, lager beer establishment, theater, opera house, circus, menagerie, or public show or exhibition of animals, or other public show or spectacle, or any trade, manufactory, business, or calling which may in any wise be dangerous, noxious, or offensive to the neighboring inhabitants; that this covenant shall run with the land, and bind the heirs and assigns of said party of the second part, owners of said land."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The defendant has filed with the building department plans and specifications for the erection of two buildings on its property. These buildings are to be five stories in height and to accommodate four families on each floor, and are what is commonly known as "tenement houses." One of the buildings is to contain two stores on a level with the street; one to be devoted to the sale of bread, cakes, and confectionery. In the cellar, directly underneath this store, there is to be provided a storeroom for the use of the tenants in the house, a boiler room, and a bakery for the baking of bread and cakes. The bakery is to occupy a space 25x35 feet and 9 feet high. It is to contain two bake ovens, each measuring in the clear 11 feet 4 inches by 13 feet 4 inches, and projecting from the rear house line into the yard of the most westerly of the two houses. The ovens are to be independent of the rest of the building and to have no connection with it, except in the manner stated. The question presented is whether the erection, maintenance, and use of these ovens will constitute a violation of the covenant above quoted. If so, then judgment is to be given for the plaintiff, restraining the defendant from erecting such ovens, or ovens of like character or description; if not, then judgment is to be given for the defendant, dismissing this action.

I am of the opinion the plaintiff is entitled to judgment. First. If effect be given to the words used, "shall not be erected, made, or carried on upon any part of said premises any * * * bakery," then the covenant expressly prohibits the erection, maintenance, and use of a bakery. Second. It seems to me it was clearly the intention of the parties—and this really is the test to be applied to a covenant of this character (Kitching v. Brown, 180 N. Y. 414, 73 N. E. 241, 70 L. R. A. 742)—to restrict the use of the premises in such a way that the same would not "be dangerous, noxious, or offensive" to persons occupying the land conveyed for residential purposes. That it was not thus occupied at the time of the conveyance is of no importance, because the covenant looked to the future, and it was then to be as effective as when made. Otherwise, the words, "This covenant shall run with the land, and bind the heirs and assigns of said party of the second part," would not have been used. When the whole covenant is considered, it seems clear it was the intention of the parties to confine the use of the land conveyed to dwelling purposes or business which would not be noxious or offensive to those who occupied it in that way. It certainly cannot be said that the use of two bake ovens, of the size, located and to be used as the two in question are intended to be, would not be noxious or offensive to persons using other portions of the property, including that adjoining, for residential purposes. To some persons the odors arising from the use of these ovens might be as offensive or annoying as odors arising from the carrying on of many of the other kinds of business prohibited. If these views be correct, then the plaintiff is entitled to a judgment under the stipulation restraining the defendant from erecting the bake ovens referred to in the submission, or ovens of a like character or description.

It follows that the plaintiff is entitled to judgment as prayed for in the stipulation.

INGRAHAM, CLARKE, and SCOTT, JJ., concur.

HOUGHTON, J. (dissenting). The stipulated facts do not show the size of the tract of land conveyed subject to the covenant in controversy, except that it was a "large tract," and consisted of a farm then in the county of Westchester, now in the borough of the Bronx, in the city of New York, and that it had thereon no buildings other than farm buildings, and that it was not plotted with streets and lots. The deed containing the covenant was made in 1865, and since that time streets have been laid out and the property has been extensively built upon. One of these streets is known as the Southern Boulevard, upon which these parties own contiguous lots. It is stipulated by the record that the Southern Boulevard is the principal business thoroughfare of the borough of the Bronx, east of Third and Westchester avenues, and that it is used principally for business purposes, and has a trolley car line, and is built up with apartment and tenement houses with and without stores. The record shows that from the time the covenant was made to the present time the character of the property has changed from farm land to city lots, thickly built upon and thickly populated. The covenant prohibits the use of the land for almost everything that could be enumerated, except dwelling houses, including meat shops and bakeries. Both meat shops and bakeries are necessities in large cities. Presumably the covenant was made for the benefit of the land. If these necessities cannot be provided for within easy reach of the inhabitants, the land will be injured, instead of benefited. It seems to me, therefore, that the covenant as to the maintenance of a bake shop should be held to give way to the changed condition, under the theory enunciated in Trustees of Columbia College v. Thatcher, 87 N. Y. 311, 41 Am. Rep. 365, and kindred cases.

Assuming that there is no ambiguity in the covenant as to "sugar or other bakery," and that it includes an ordinary bread and cake bakery, such as the defendant proposes to install and operate, and conceding that its maintenance would cause some annoyance and discomfort to the plaintiff, still I think judgment should be directed for the defendant; and I so vote.